UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| BRANCH BANKING AND TRUST CO., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:18-cv-610-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LAURA MASSEY JONES, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*

This matter is before the Court upon Plaintiff's renewed
Motion for a Temporary Restraining Order [DE 15], renewed Motion
for Expedited Discovery [DE 16], and Motion for a Preliminary
Injunction [DE 17].  BB&T's Motion for a Temporary Restraining
Order [DE 15] will be **GRANTED** because BB&T has met the substantive
requirements for issuance of a temporary restraining order.  BB&T's
Motion for Expedited Discovery [DE 16] will be **GRANTED IN PART** and
**DENIED IN PART**.  BB&T has shown good cause for limited expedited
discovery but the Court will significantly narrow the scope of the
expedited discovery.  Finally, a hearing will be scheduled to
consider the Motion for a Preliminary Injunction [DE 17].

## I.  Procedural and Factual Background

Plaintiff Branch Banking and Trust Company ("BB&T") filed
this breach of contract action on November 9, 2018.  [DE 1].  BB&T
brought this action against four former employees, and Individual
Defendants, Laura Massey Jones, Ralph S. "Bud" Watson, II, John

1

Cadwell, and Lee Lamonica Walker ("Individual Defendants"), and The Farmers National Bank of Danville, d/b/a WealthSouth ("WealthSouth"). BB&T alleges the defendants misappropriated BB&T trade secrets in violation of the Kentucky Uniform Trade Secrets Act and engaged in a civil conspiracy. [*Id.* at 14-15, 20-21]. BB&T also alleges that the Individual Defendants violated contractual non-disclosure agreements and interfered with contractual relations. [*Id.* at 15-18]. Furthermore, BB&T alleges that Defendants Jones, Watson, and Cadwell breached contractual non-solicitation agreements and that Defendant WealthSouth interfered with the contractual relationship between BB&T and the Individual Defendants. [*Id.* at 12-13, 18-19]. BB&T seeks punitive damages, injunctive relief, compensatory damages, costs, and attorneys' fees. [*Id.* at 19-20, 21-24].

According to BB&T, Defendants Jones, Watson, and Cadwell are former employees who entered into contractual employment agreements that provided that during their employment, and for certain periods[1] following their termination of employment with BB&T, that the defendants would not "call upon, solicit, divert, or take away any of BB&T's clients, current or potential." [*Id.*

---

[1] It appears that the time periods in the employment agreements vary. For example, Defendant Jones appears to have been subject to an eighteen month non-compete clause [DE 1-6 at 11] while Defendants Watson and Cadwell were subject to twelve-month non-compete clauses. [Id. at 13, 16].

at 3]. BB&T alleges that these defendants acknowledged "that for any violation or threatened violation of any [contractual] covenants, BB&T will . . . be entitled to specific performance and an injunction (without bond) to be issued . . . ." [*Id.* at 4, DE 1-1 at 2; DE 1-3 at 2, DE 1-4 at 2]. Finally, BB&T claims that Defendant Walker signed a non-disclosure agreement. [DE 1 at 8; DE 1-2].

BB&T asserts that the Individual Defendants "abruptly resigned" on September 4, 2018. [DE 1 at 10]. BB&T further contends that the Individual Defendants "immediately went to work for WealthSouth," a direct competitor of BB&T, and "began calling on and soliciting BB&T clients and business opportunities." [*Id.*].

Apparently, the parties attempted to resolve the dispute before the commencement of this action. BB&T has attached exhibits containing correspondence between the parties' attorneys. [*See* DE 1-6; DE 1-7; DE 5-1]. In fact, counsel for the Defendants assured BB&T that Individual Defendants Jones, Watson, and Cadwell would honor their continuing contractual obligations with respect to the BB&T contracts. [See DE 1-6 at 1, Page ID # 38; DE 1-7 at 2, Page ID # 56].

Even so, the relationship soured. BB&T claims that the Individual Defendants are actively soliciting their customers and exposing their trade secrets, in violation of the contractual provisions in the employee contracts. [See DE 1; DE 5]. BB&T

3

further claims that the actions of the Defendants are causing continuing and irreparable harm. [DE 1; DE 15].

As a result, on November 12, 2018, BB&T moved for a temporary restraining order against the Defendants. [DE 5]. Initially, the Court granted an *ex parte* temporary restraining order [DE 6] but it was subsequently vacated without prejudice due to a procedural deficiency. [DE 14]. The Court, having vacated the temporary restraining order, also denied BB&T's previous Motion for Expedited Discovery. [*Id.*].

On November 21, 2018, BB&T filed a renewed Motion for a Temporary Restraining Order [DE 15], a renewed Motion for Expedited Discovery [DE 16], and a Motion for a Preliminary Injunction [DE 18]. Since the Defendants have appeared in this action and opposed the initial temporary restraining order, the Court allowed a response from the Defendants [DE 20] and reply from the Plaintiff [DE 26] on an expedited briefing schedule. The Defendants responded [DE 23; DE 24] and BB&T replied [DE 32, DE 33], making this matter ripe for review. Consideration of all three motions will be consolidated into this memorandum opinion and order.

## II. Analysis

BB&T asserts that they will be irreparably harmed without injunctive relief from the Court due to the Defendants' past and continuing violations of the BB&T employment contracts. [*See* DE 15]. Furthermore, BB&T asserts that expedited discovery is

4

necessary to determine whether a preliminary injunction is warranted in this matter. [*See* DE 16; *see also* DE 17].

The Defendants oppose BB&T's request for injunctive relief by claiming that BB&T's motion fails to meet the subsequent requirements for the issuance of a temporary restraining order. [*See* DE 24]. Additionally, the Defendants oppose BB&T's request for expedited discovery, asserting that the discovery requests are too broad and that it will difficult to complete the expedited discovery within twenty-eight days considering the upcoming holiday season. [*See* DE 23].

Both parties make compelling arguments. Still, at this stage, the Court finds that the issuance of a temporary restraining order is warranted to preserve the status quo until the Court may consider whether a preliminary injunction is warranted for the pendency of the litigation. Furthermore, the Court will grant BB&T the opportunity to conduct limited expedited discovery to determine if a preliminary injunction is warranted in this matter. Still, the Court will substantially limit the scope of the proposed expedited discovery.

## A.   Temporary Restraining Order

"The factors to be weighed before issuing a TRO are the same as those considered for issuing a preliminary injunction." *Contrech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809, 814 (E.D. Mich. 2013) (quoting *Monaghan v. Sebelius*, 916 F.

Supp. 2d 802, 807 (E.D. Mich. 2012)). Thus, when a party seeks a temporary restraining order, the Court must consider: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *see also Stein v. Thomas*, 672 F. App'x 565, 569 (6th Cir. 2016). These are "factors to be balanced, not prerequisites that must be met." *Tenke Corp.*, 511 F.3d at 542. For example, where a party makes "an extremely strong showing of irreparable harm" they are "not required to make as strong a showing of a likelihood of success on the merits." *Stein*, 672 F. App'x at 569.

**(1) Likelihood of Success on the Merits**

First, the renewed Motion, Complaint, and accompanying affidavits raise serious questions about whether the BB&T contractual provisions were violated and demonstrate a strong likelihood that BB&T will proceed on the merits. As the Court previously discussed, non-solicitation agreements are generally enforceable under Kentucky law. *See, e.g.*, *Hammons v. Big Sandy Claims Service, Inc.*, 567 S.W.2d 313, 315 (Ky. Ct. App. 1978); *Crowell v. Woodruff*, 245 S.W.2d 447, 449 (Ky. 1951) (upholding

6

validity of contractual non-compete agreement). The parties do not dispute the enforceability of the contracts in question nor do they contest the validity of the relevant contractual provisions.

BB&T has provided affidavits and letters in support of its Complaint and renewed Motion for a Temporary Restraining Order. In a letter dated September 13, 2018, counsel for the Defendants assured BB&T that "WealthSouth has instructed Mr. Watson, Ms. Jones, and Mr. Cadwell to comply with their non-solicitation obligations [for] the required term[s]." [DE 1-7 at 2, Page ID # 56]. Still, Lori McGuire, Senior Vice President and Portfolio Manager at BB&T, alleges that she contacted clients of BB&T's Lexington office and learned that "by September 6, 2018, most of BB&T's more significant clients had already been contacted by one or more of the former employees." [DE 15-2 at 2, Page ID # 304]. Importantly, McGuire's affidavit states that over thirty-three BB&T accounts have transferred to WealthSouth since the Individual Defendants resigned on September 4, 2018. [*Id.* at 2-3, Page ID # 304-05].

BB&T has also presented an affidavit [DE 15-3] and supplemental affidavit [DE 15-5] from Greg Broadridge, Senior Vice-President for BB&T in Louisville. Similarly, the Broadridge affidavit alleges that calls to BB&T clients revealed that BB&T's more significant clients were being contacted by one or more of the Individual Defendants. [DE 15-3 at 2, Page ID # 307].

7

Finally, BB&T has included an affidavit from Veronica Wang.
[DE 1-5]. Ms. Wang asserts that she is a long-time customer of
BB&T and that she had communicated and worked primarily on her
accounts at BB&T with Bud Watson, Laura Jones, and Lee Lamonica
[Walker] in the Lexington, Kentucky BB&T wealth management office.
[DE 1-5 at 1, Page Id # 37]. Ms. Wang further alleges that Laura
Jones contacted her on September 6, 2018, to inform Wang that she
was employed at another bank and to ask Wang to move her BB&T
accounts to the new bank where Jones worked. [*Id.*].

In response, the Defendants claim that the affidavits do not
demonstrate that BB&T is likely to succeed on the merits because
the affidavit testimony is replete with hearsay. [*See* DE 24 at 7,
Page ID # 500]. Of course, the Defendants are correct that the
testimony in the affidavits concerning contacts to current or
former BB&T clients appears to constitute hearsay.

Still, there is ample evidence in the record to raise grave
concerns about past and continuing violations of the BB&T
contracts. For instance, Lori McGuire has personal knowledge of
the fact that thirty-three BB&T accounts have transferred to
WealthSouth since September 4, 2018. [DE 15-2 at 2, Page Id #
304]. The timeframe of these transfers corresponds with the
resignation of the Individual Defendants. Additionally, and most
glaringly, BB&T has provided testimony from Veronica Wang, a BB&T
wealth management client, who alleges that she was directly

solicited by one of the Individual Defendants. The Defendants response discusses the affidavits from Lori McGuire and Greg Broadridge but fails to address or even mention the affidavit provided by Veronica Wang. [*See* DE 24 at 7, Page ID # 500].

Furthermore, the Defendants claim that this Court's previous decision in *Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, is controlling here and that application of *Wells* to this case demonstrates that BB&T has failed to demonstrate likelihood of success on the merits. *See Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 919 F. Supp. 1047 (E.D. Ky. 1994). [See DE 24 at 5-8 Page ID # 498-501]. But while *Wells* is highly instructive, it is not directly on point in this factual scenario.

In *Wells*, the Plaintiff signed an employment agreement that stated, in part, "In the event of termination of my services with Merrill Lynch for any reason, I will not *solicit* any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch . . . ." *Wells*, 919 F. Supp. at 1049 (emphasis in original). The Court analyzed the meaning of the term "solicit" in the Merrill Lynch non-solicitation agreement. The Defendants correctly point out that the *Wells* Court found that "mere informational contact" with a former client did not constitute "solicitation" under the employment agreements. *Id.* at 1053. Additionally, the Defendants are correct that the

burden of proving wrongful solicitation is on the Defendant. *Id.* at 1054.

But here, the BB&T employment agreements prohibit a range of conduct that is more broad than the employment agreement that the Court analyzed in *Wells*. In *Wells*, the employment agreement only prohibited the employee from soliciting any Merrill Lynch clients for a one-year period. *Id.* at 1049-50. In this case, the BB&T employment agreements prohibit the Defendants from "call[ing] upon, solicit[ing], divert[ing], or tak[ing] away any of BB&T's clients, current or potential." [DE 1 at 3]. As such, there are important factual differences between *Wells* and the present case.

Still, the Court need not define the scope of each of these terms at present because BB&T has demonstrated a strong likelihood of success on the merits, even under the *Wells* standard. Here, BB&T has demonstrated that at least thirty-three BB&T accounts have transferred to WealthSouth since September 4, 2018, *and* has provided testimony from at least one BB&T client that alleges a direct *solicitation* in violation of the BB&T employment agreements. Of course, this does not conclusively demonstrate that BB&T will succeed on the merits, but it provides a strong likelihood that direct solicitations took place that constituted more than mere informational contact. As a result, BB&T has demonstrated a strong likelihood of success on the merits.

**(2) Irreparable Harm**

Second, as the Court previously held, BB&T has adequately demonstrated a threat that it suffer irreparable harm without the issuance of a temporary restraining order. Initially, BB&T alleged that "at least thirty-two accounts have transferred or are in the process of transferring from BB&T to WealthSouth since the resignations on September 4, 2018," constituting approximately $28,000,000 in assets and resulting in annual revenue loss in excess of $250,000. [DE 1-8 at 4]. Currently, BB&T alleges that at least thirty-three BB&T accounts have transferred to WealthSouth since September 4, 2018. [See DE 15-2 at 2, Page ID # 304]. In fact, of the thirty-three accounts that have transferred to WealthSouth since early-September, at least seven have transferred in November, 2018. [*Id.*]

"Irreparable harm is generally defined as harm that cannot be fully compensated by monetary damages." *Wilson v. Bd. Of Educ. Of Fayette Cty.*, No. 5:14-cv-454-JMH, 2015 WL 4397152 (E.D. Ky. July 16, 2015) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). Still, BB&T alleges damages that are non-economic and difficult to quantify, such as loss of client confidence, damage to the company's good will and reputation, and compromise of client's trust in BB&T to handle confidential information. [DE 5 at 10-12]. The Sixth Circuit and district courts have found that such harm is irreparable. *See,*

*e.g.*, *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."); *Stryker Corp. v. Bruty*, No. 1:13-cv-288, 2013 WL 1962391, at *6 (W.D. Mich. May 10, 2013); *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 533 (S.D.N.Y. 2004) ("[I]rreparable harm is presumed where a trade secret has been misappropriated, even in the absence of an employment agreement.").

In response, the Defendants claim that the fact that BB&T waited seventy days from the Individual Defendants resignations to file this lawsuit demonstrates that there is no threat of irreparable harm. But while the seventy-day period between the resignations and the filing of the lawsuit is relevant, it does not conclusively establish that BB&T will not suffer irreparable harm without injunctive relief.

After becoming aware of potential violations of the employment agreements, it appears BB&T attempted to engage in discussions with the Defendants. BB&T claims that notwithstanding these dispute resolution efforts, that the Individual Defendants have and continue to violate the provisions in the employment agreements. The record indicates that almost immediately after the resignations of the Individual Defendants, BB&T began contacting clients and engaged in correspondence with counsel for

the Defendants.  As such, the fact that seventy days passed between the resignations of the Individual Defendants and the filing of the present lawsuit does not indicate that BB&T will not suffer future irreparable harm from the past or continued violation of the employment agreements.  This is not a case where BB&T did nothing and decided to file a lawsuit seventy days after the employees resigned.

Ultimately, BB&T has provided evidence that thirty-three BB&T wealth management accounts have transferred to WealthSouth since September 4, 2018, and that at least one BB&T client was directly solicited by one of the Individual Defendants.  Additionally, BB&T has asserted that it will suffer damage to its business reputation and customer goodwill without injunctive relief.  As such, at this stage, BB&T has provided sufficient information to demonstrate a threat of irreparable harm.

**(3)  Substantial Harm to Others**

Third, granting a temporary restraining order will not cause substantial harm to third parties or the Defendants.  As the Court previously discussed, the Defendants, through their attorney, have indicated that they intend to comply with the obligations imposed by the BB&T contracts.  [*See* DE 1-7 at 2, Page ID # 56].

The Defendants claim that the injunctive relief requested is too broad and that preventing the Defendants from contacting any and all clients from the last eighteen months of their employment

with BB&T does not comport with the *Wells* decision. [See DE 24 at 9, Page ID # 502]. But the Individual Defendants have already promised, both through contractual agreement and through communications from their attorney, not to engage in the behavior prohibited in temporary restraining order. Additionally, the order only prevents WealthSouth from aiding in the breaches of the Individual Defendants' contracts or benefitting from wrongful communications or solicitations in violation of the employment agreements.

This order simply requires the Defendants to comply with the non-solicitation and non-disclosure agreements in the BB&T contracts until limited expedited discovery may be conducted and a hearing on the Motion for Preliminary Injunction may be held. Nothing in this order prevents current or former BB&T wealth management clients from freely choosing to move their business to WealthSouth. Nothing in this order prevents WealthSouth employees, other than the Individual Defendants, from soliciting BB&T customers on the open market. Nothing in this order prevents current BB&T customers from freely choosing to move their business to WealthSouth.

Finally, this order does not violate the Court's previous decision in *Wells*. Again, the BB&T employment agreements prohibited calling upon, soliciting, diverting, or taking away BB&T's current or former clients. The BB&T employment agreements

14

prohibit a wider range of conduct than the agreement considered by the Court in *Wells*.

Also, nothing in this order prevents informal, inadvertent contact between the Individual Defendants and current or former BB&T clients. Hypothetically, if one of the Individual Defendants saw a BB&T client at the grocery store, they could say hello and, if asked, could inform the client that they are employed at WealthSouth. After that conversation, if the client so chose, she could move her wealth management business to WealthSouth on her own volition. That hypothetical conversation would become wrongful, however, if after responding the client's inquiry, one of the Individual Defendants said something like, "Let's set up a meeting so we can discuss transferring your BB&T accounts to WealthSouth."

The Court need not engage in endless hypotheticals or examine every possible factual scenario that may or may not violate the BB&T contracts. The temporary restraining order is not as restrictive as the Defendants assert. Ultimately, the order will serve to protect the status quo while causing little harm, if any, to the Defendants or third parties.

**(4) Public Interest**

Fourth, as the Court previously discussed, the public interest is best served by enforcing the contractual provisions. *See Tenke Corp*., 511 F.3d at 551 (ruling that holding Defendants

to the terms of their agreement weighed in favor of injunctive relief). Here, the public interest is best served by maintaining the status quo and holding the Defendants to their apparent contractual obligations until a hearing may be held to consider a preliminary injunction.

In response, the Defendants claim that no public interest will be served by the "extraordinary relief" that the Plaintiff seeks. [DE 24 at 9, Page ID # 502]. Additionally, the Defendants assert that the Plaintiff has failed to demonstrate that solicitous conduct has occurred. [*Id.*].

But the Defendants' argument ignores the affidavit of Veronica Wang, which provides proof of wrongful solicitous conduct on at least one occasion. The Wang affidavit, paired with evidence of at least thirty-three BB&T accounts transferring to WealthSouth since early-September, demonstrates that solicitous conduct has potentially occurred. Of course, some of the thirty-three accounts that have transferred from BB&T to WealthSouth over the past few months may have transferred without any wrongful solicitation from the Defendants. If so, nothing in this order prohibits or prevents those transfers from taking place. Regardless, BB&T has provided sufficient evidence to demonstrate a substantial likelihood that the BB&T contracts were breached, which also suggests that it is in the public interest to preserve the status quo until additional discovery may be conducted and a hearing may be held.

**(5) Requirement of Bond or Security**

Finally, as the Court discussed in its previous order, the plain language of Fed. R. Civ. P. 65(c) seems to require the movant post an adequate security or bond to protect the nonmovant if the injunction is wrongful. Still, the Sixth Circuit has held that "[c]ontrary to the strong language of Rule 65(c), . . . a court has no mandatory duty to impose a bond as a condition for issuance of injunctive relief." *NACCO Materials Handling Grp. V. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 952-53 (6th Cir. 2007) (citing *Roth v. Bank of Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978); *see also Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).

Again, the Court has considered the issue and will not require BB&T to post a bond at this time. Three of the individual defendants, Jones, Watson, and Cadwell, signed contracts providing that in the event of breach, BB&T would "be entitled to specific performance and an injunction (without bond) to be issued . . . ." [DE 1-1 at 2; DE 1-3 at 2; DE 1-4 at 2]. Additionally, the Defendants have not requested that a bond or security be required. The Court will reconsider the issue of security or bond if raised by the parties.

In sum, having considered the arguments by all parties, the Court will grant BB&T's renewed Motion for a Temporary Restraining Order to maintain the status quo. Maintaining the status quo

requires that the Defendants refrain from activity that would violate the provisions in the BB&T contracts. Still, nothing in this order prevents BB&T customers from freely choosing to do business elsewhere, including at WealthSouth.

**B.  Expedited Discovery**

The Court "has discretion to order expedited discovery where a party shows good cause for this departure from the usual discovery process." *Kentucky CVS Pharmacy v. McKinney*, No. 5:13-CV-025-KSF, 2013 WL 1644903, at *1 (E.D. Ky. Apr. 16, 2013) (citing Fed. R. Civ. P. 26(d); *5ifth Element Creative, LLC v. Kirsch*, No. 5:10–cv–255–KKC, 2010 WL 4102907 at *2 (E.D. Ky. Oct. 18, 2010)). Expedited discovery is "appropriate in some cases, such as those involving requests for a preliminary injunction . . . ." *Id.* (quoting Advisory Committee Notes on 1993 Amendments to Fed. R. Civ. P. 26). Requests for expedited discovery "must be narrowly tailored to obtain information relevant to the determination of the preliminary injunction." *Id.* (quoting *5ifth Element Creative, LLC v. Kirsch*, No. 5:10–cv–255–KKC, 2010 WL 4102907 at *2 (E.D. Ky. Oct. 18, 2010)). "Expedited discovery is not the norm." *5ifth Element Creative, LLC*, 2010 WL 4102907, at *2.

**(1)  Proper Standard of Review for Expedited Discovery Requests**

First, the parties dispute the appropriate standard to be used for consideration of expedited discovery motions. The Plaintiff claims that the good cause standard applies, requiring

the Court to determine whether the request for expedited discovery is reasonable considering the surrounding circumstances. *5ifth Element Creative, LLC*, 2010 WL 4102907, at *2. The Defendants argue that, in addition to the good cause standard, courts have also used an irreparable harm standard when considering motions for expedited discovery. *Wilcox Industries Corp. v. Hansen*, 279 F.R.D. 64, 67-68 (D.N.H. 2012) (citing *Momenta Pharmaceuticals, Inc. v. Teva Pharmaceuticals Industries LTD*, 765 F. Supp. 2d 87, 88-89 (D. Mass. 2011)).

The Court notes that the good cause standard appears to be the applicable standard used most commonly in the Eastern District of Kentucky. *See, e.g.*, *Jockey Club Info. Sys., Inc. v. Doe*, No. 5:15-CV-204-KKC, at *1-2 (E.D. Ky. Jul. 24, 2015); *Kentucky CVS Pharmacy*, 2013 WL 1644903, at *1. In considering a motion for expedited discovery, the Court must consider several factors, including the danger that the nonmovant will not preserve the information sought, whether expedited discovery will substantially contribute to moving the case forward, and the narrow scope of the information sought. *Jockey Club Info. Sys., Inc.*, 2015 WL 4523498, at *1 (citing *Best v. Mobile Streams, Inc.*, No. 1:12-CV-564, 2012 WL 5996222, at *1 (S.D. Ohio Nov. 30, 2012)).

**(2) Whether Good Cause Exists to Allow Expedited Discovery**

On balance, there is good cause to allow expedited discovery in this matter, but the proposed discovery must be substantially

narrowed.  While BB&T has not alleged that the Defendants will not preserve pertinent material, it has made a strong case that expedited discovery is both necessary and will advance this litigation.  BB&T has provided evidence that raises concern about whether contractual non-compete and non-disclosure agreements were violated.  Further, BB&T alleges that these past and continuing violations will cause them irreparable harm.

Expedited discovery will permit BB&T to investigate whether the provisions in the employment agreements and non-disclosure agreements were breached.  Determining whether the contracts were breached, and the extent of those breaches, if any, will serve the interests of both parties at this stage in the litigation.  For instance, if BB&T discovers additional information that indicates that their agreements were or are currently being breached, they may pursue their pending motion for a preliminary injunction in order to maintain the status quo for the pendency of this litigation.  Alternatively, if the limited expedited discovery does not demonstrate a substantial likelihood that the BB&T contracts were breached, it may provide the Defendants with an argument to vacate the temporary restraining order.

The Defendants' primary issue with the requests for expedited discovery seems to be that the discovery requests are not narrowly tailored and that it will be difficult to conduct the discovery in the time proposed by BB&T.  [*See* DE 23].  In this regard, the

Defendants are correct that the requests for expedited discovery are not narrowly tailored.

For instance, proposed interrogatory number one states: "Please list all current, former, and/or potential depositors, customers, and/or clients of BB&T or its affiliates with whom you had contact during the last 18 months of your employment with whose business you solicited on behalf of BB&T." [See DE 16-3 at 5, Page ID # 328]. First, it is unclear why BB&T would not already have access to this information. Second, the question is very broad and does not appear necessary for the purpose of supporting the motion for a preliminary injunction. This is a question best left for the typical discovery process.

Additionally, BB&T has proposed deposing the Individual Defendants. The issue with this request is that BB&T did not provide a list of narrowly drawn proposed list of questions to accompany these requests and it is unclear why these depositions are necessary considering the proposed interrogatories.

Here, the sole purpose of the expedited discovery is to determine whether a preliminary injunction is warranted for the pendency of this action to maintain the status quo and prevent BB&T from suffering irreparable harm. The evidence currently before the Court is that at least thirty-three accounts have transferred from BB&T to WealthSouth since early-September and a sworn affidavit from a BB&T client alleging that she was directly

solicited by Defendant Jones. It does not appear that much additional information is required before the Court may consider the Motion for Preliminary Injunction.

Courts may limit the scope of overbroad discovery requests. *See Giles v. Univ. of Toledo*, 286 F. App'x 295, 303 (6th Cir. 2008). As such, the Court will permit expedited discovery but will limit the discovery to *determining whether the Defendants have or are continuing to violate the BB&T contractual provisions.* To that end, the Court will allow the following limited expedited discovery:

(1) BB&T may present proposed interrogatories number four (4) and five (5) to Defendants Jones, Watson, and Cadwell, pertaining to communications that they had with current, former, or potential BB&T customers since September 4, 2018 [DE 16-3; DE 16-6;DE 16-9];

(2) BB&T may present proposed interrogatory number three (3) to Defendant Walker [DE 16-12]; and

(3) BB&T may take the deposition of Thomas Knight and Ron Sanders, consistent with the narrow purpose explicated above. Additionally, BB&T may require Thomas Knight and Ron Sanders to produce any document reflecting any communications with the Defendants on or after August 27, 2018 [DE 16-17; DE 16-18].

This information should allow the Court to determine whether a preliminary injunction should issue. After engaging in this

limited discovery, if the parties feel that there is insufficient information to allow the Court to consider granting a preliminary injunction, they may request additional discovery at that time. At present, this narrow expedited discover will allow BB&T to gather information in support of its motion for a preliminary injunction while also protecting the Defendants from potential prejudice imposed by overbroad discovery requests.

## C. Preliminary Injunction

The Plaintiff has requested twenty-eight days to complete expedited discovery relevant to the Motion for Preliminary Injunction in this matter. [*See* DE 16-2]. The Defendants have responded and assert that expedited discovery likely cannot be conducted in this amount of time. [DE 23 at 3, Page ID # 483]. Still, this Memorandum Opinion and Order had significantly limited the amount of expedited discovery that is warranted at this stage in the litigation. As such, the Court will schedule a hearing to consider the Motion for Preliminary injunction or, in the alternative, to allow the parties to provide a status report on the expedited discovery schedule and to hear argument on whether the temporary restraining order should be extended.

## III. Conclusion

A temporary restraining order is warranted to maintain the status quo until the Court may hold a hearing on the Motion for a Preliminary Injunction. Additionally, there is good cause to allow

very narrow expedited discovery to determine if a preliminary injunction should issue in this matter. Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's renewed Motion for a Temporary Restraining Order [DE 15] is **GRANTED**;

(2) That Defendants Laura Massey Jones, Ralph S. "Bud" Watson, II, John Cadwell, Lee Lamonica Walker, and The Farmers National Bank of Danville, d/b/a WealthSouth, as well as their representatives, employees, agents, and assigns, are hereby **RESTRAINED** from doing the following:

(a) Using, possessing, copying, and/or disclosing BB&T's confidential information and/or trade secrets, as defined by applicable law and the BB&T non-disclosure agreement;

(b) Breaching (or aiding the breaches of) Jones's, Watson's, and Cadwell's non-disclosure agreements with BB&T; and

(c) Benefitting from communications with or solicitation of BB&T's current or potential depositors, customers, or clients in breach of Jones's, Watson's, and Cadwell's non-solicitation agreements and the Individual Defendants' non-disclosure agreements from September 4, 2018, to the present;

(3) Defendants Watson, Cadwell, and Jones are **RESTRAINED** from doing the following:

(a) Calling upon any of the depositors, customers, or clients of BB&T or its affiliates with whom he or she had contact during the last 18 months of his or her employment with BB&T, or potential depositors, customers, or clients of BB&T or its affiliates whose business they solicited on behalf of BB&T during the last 18 months of his or her employment with BB&T, for the purpose of soliciting them on behalf of anyone other than BB&T for a product or service similar to that provided by BB&T or its affiliates;

(b) Soliciting, diverting, or taking away, or attempting to solicit, divert, or take away any of the depositors, customers, or clients of BB&T or its affiliates with whom he or she had contact during the last 18 months of his or her employment with BB&T, or any potential depositors, customers, or clients of BB&T or its affiliates whose business they solicited on behalf of BB&T during the last 18 months of his or her employment with BB&T; and

(c) Inducing or attempting to induce any employee of BB&T or its affiliates to terminate his or her employment with BB&T or its affiliates;

(4) Plaintiff's Motion for Expedited Discovery [DE 16] is **GRANTED IN PART** and **DENIED IN PART**;

(5) Plaintiff may engage in the following discovery for the purpose of *determining whether the Defendants have or are continuing to violate the BB&T contractual provisions*:

(a) BB&T may present proposed interrogatories number four (4) and five (5) to the Individual Defendants, pertaining to communications that the Individual Defendants had with current, former, or potential BB&T customers since September 4, 2018 [DE 16-3; DE 16-6; DE 16-9];

(b) BB&T may present proposed interrogatory number three (3) to Defendant Walker [DE 16-12]; and

(c) BB&T may take the deposition of Thomas Knight and Ron Sanders, consistent with the narrow purpose explicated above. Additionally, BB&T may require Thomas Knight and Ron Sanders to produce any document reflecting any communications with the Defendants on or after August 27, 2018 [DE 16-17; DE 16-18];

(6) All discovery disputes are hereby **REFERRED** to the presiding magistrate judge for appropriate resolution pursuant to 28 U.S.C. § 636(b)(1)(A). No motions to compel, nor any other motions relating to a discovery dispute, shall be filed unless all counsel involved in such dispute have

26

first conferred as directed by Fed. R. Civ. P. 37(a)(1), and said counsel have then conferred with the magistrate judge, by telephone conference call, and received his or her permission to file such motion, with such briefing thereupon as he or she shall direct by appropriate order;

(7) This this matter shall come for a hearing before Judge Joseph M. Hood on the Motion for a Preliminary Injunction [DE 17], or alternatively, this hearing shall function as an update on the status of expedited discovery and necessity of extending the temporary restraining order, on **Tuesday, December 18, 2018, at 11:00 a.m.** at the **UNITED STATES COURTHOUSE, in Lexington, Kentucky**, subject to intervening orders of the Court; and

(8) That Plaintiff is not required to post bond at this time but that the Court will consider the requirement of security or a bond if raised by the parties.

This the 4th day of December, 2018.



**Signed By:**

_**Joseph M. Hood**_

**Senior U.S. District Judge**