UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

BRANCH BANKING AND TRUST )
COMPANY, )
 )           Case No.
      Plaintiff, )        5:18-cv-610-JMH
 )
v. )           **MEMORANDUM OPINION**
 )              **AND ORDER**
LAURA MASSEY JONES, *et al.*, )
 )
      Defendants. )

\*\*\*

This matter is before the Court on the parties' motions to
alter, amend, or correct the preliminary injunction previously
imposed by the Court. [DE 52; DE 55; DE 58]. After reviewing the
briefs, the Defendants' motion to alter or amend [DE 52] and
supplemental motion to alter or amend [DE 58] are **GRANTED IN PART**
and **DENIED IN PART** and Plaintiff's motion to correct [DE 58] is
**GRANTED.**

## I. Procedural History

This action, initially filed in November 2018, has a complex
and lengthy procedural history[1] that need not be repeated in full
here.[2]   Previously, after a hearing, the Court granted a

---

[1] A detailed factual and procedural background is provided in the
Court's previous memorandum opinion and order. [*See* DE 34 at 1-
4, Pg ID 544-47].
[2] The Court understands that motions for injunctive relief can be
complicated.   Additionally, the Court exists to resolve actual
disputes between the parties.   Still, one explanation for the
complex procedural history in this case is that the parties also
appear to be communicating and quarreling with each other through

preliminary injunction to preserve the status quo for the duration of this lawsuit. [DE 48]. Subsequently, the Defendants moved to alter or amend the preliminary injunction. [DE 52]. Then, the Plaintiff moved to correct the preliminary injunction. [DE 55]. Finally, the Defendants filed a supplemental motion to clarify. [DE 58]. At present, the motions have either been fully briefed or the time for briefing has passed. As a result, the pending motions are ripe for review.

## II. Analysis

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment within 28 days after the entry thereof. "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

"A motion under Rule 59(e) does not simply provide an opportunity to reargue a case, and it must be supported either by a showing that the district court made an error of law or by newly discovered evidence." *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste Marie Tribe of Chippewa Indians*

---

motions filed with the Court. This matter is now in discovery. As such, the parties need to communicate directly and in good-faith about how to resolve the disputes in this action.

*v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007)). The Rule is not "a substitute for appeal." *Turner v. City of Toledo*, 671 F. Supp. 2d 967, 969 (N.D. Ohio 2009). "If . . . a Rule 59 motion merely quibbles with the Court's decision, the proper recourse is not a motion for reconsideration but instead an appeal to the Sixth Circuit." *Zell v. Klingelhafer*, No. 13-cv-458, 2018 WL 334386, at *4 (S.D. Ohio Jan. 8, 2018).

## A. BB&T's Request for Oral Argument

BB&T has requested oral argument pursuant to Local Rule 7.1(f). [DE 61 at 1, Pg ID 903]. But BB&T has not explained why oral argument is necessary in this matter or how additional argument will assist the Court in resolving the pending motions. As the Court noted, this case has a complex history and the record is well developed. Additionally, the Court heard oral argument from the parties on the motion for preliminary injunction and the parties have either fully briefed the pending motions or the time for briefing has passed. As such, oral argument is unnecessary to resolve the disputes currently pending before the Court.

## B. Defendants' Motion to Alter or Amend

The Defendants contend that the Court's preliminary injunction contains inconsistent provisions necessitating correction or clarification. In response, the Plaintiff claims that the Defendants are trying to reap the rewards of their

3

wrongful solicitation of BB&T customers. These arguments and the relevant provisions of the preliminary injunction are discussed below.


**(1)  Relevant Provisions of the Preliminary Injunction**

The Court's preliminary injunction states in part,

> Defendants Laura Massey Jones, Ralph S. "Bud" Watson, II, John Cadwell, and The Farmers National Bank of Danville, d/b/a WealthSouth, as well as their representatives, employees, agents, and assigns, are hereby **ENJOINED** from doing the following:
>
> . . .
>
> (c) Receiving any future benefit from solicitation of BB&T's current or potential depositors, customers, or clients in breach of Jones's[3], Watson's, and Cadwell's non-solicitation agreements and the Individual Defendants' non-disclosure agreements from September 4, 2018, until this matter is resolved[.]

[DE 48 at 2, Pg ID 691 (emphasis in original)]. This provision is intended to prevent any future harm to BB&T by enjoining

---

[3] When quoting the language in the Court's preliminary injunction, counsel for the Defendants used the Latin adverb "sic" to indicate that the Court made a grammatical error in the preliminary injunction by adding an apostrophe plus the letter s to form the singular possessive form of "Jones." [DE 51-1 at 4, Pg ID 720]. While the proper possessive form of proper nouns ending in the letter s appears to be a matter of stylistic discretion in common usage, the Chicago Manual of Style and other reputable guides on the English language provide that the proper singular possessive of a proper noun ending in the letter s is formed by adding an apostrophe plus the letter s, as the Court did in the preliminary injunction. CHICAGO MANUAL OF STYLE § 7.17 (17th ed. 2017).

WealthSouth from transferring the business of any former BB&T customer who was solicited in violation of the BB&T non-solicitation provisions applicable to Jones, Watson, and Cadwell.

Other relevant provisions of the preliminary injunction say,

> (7) This Order does not prevent current or former BB&T customers from voluntarily contacting WealthSouth or voluntarily transferring their business to WealthSouth;
> (8) This Order does not prevent other WealthSouth employees, with the exclusion of Defendants Jones, Cadwell, and Watson, from soliciting the business of BB&T customers[.]

[*Id.* at 5, Pg ID 694]. These provisions simply state the obvious, that any current or former BB&T customer who was not wrongfully solicited may freely choose to conduct business with any wealth management business, including WealthSouth, and that other WealthSouth employees, who are not subject to the BB&T non-solicitation provisions, may solicit the business of BB&T customers.

Furthermore, two additional provisions in the Court's preliminary injunction are relevant to the current discussion. First, the Court noted that, "This Order does not prevent communication or solicitation of BB&T clients who came to BB&T solely as a result of Defendant Jones's, Cadwell's, or Watson's own recruitment efforts, which BB&T neither subsidized nor otherwise financially supported as part of a program of client development[.]" [Id.]. This provision reflects and comports with

the rule of law in *Hall v. Edgewood Partners*, 878 F.3d 524 (6th Cir. 2017). In *Hall*, the Sixth Circuit held that a non-solicitation agreement could only prohibit solicitation of former clients that were recruited with the benefit of the employer's resources. In other words, the BB&T non-solicitation provisions do not apply to current or former BB&T clients that were recruited to do business at BB&T based solely on the efforts of Jones, Cadwell, or Watson, without the use of BB&T resources.

Second, and finally for the purposes of the pending motion to alter or amend, the preliminary injunction provides that, "This Order does not prevent merely informal or informational non-solicitous contact or communication between Defendants Jones, Cadwell, or Watson and any former, current, or potential depositors, customers, or clients of BB&T or its affiliates." [DE 48 at 5, Pg ID 694]. This provision acknowledges the holding in *Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 919 F. Supp. 1047 (E.D. Ky. 1994). In *Wells*, another judge of this Court held that merely informational contact or communication did not constitute solicitation.

## (2) **Effect of the Preliminary Injunction and the Motion to Alter or Amend**

Here, the Defendants argue that the provisions in the preliminary injunction are inconsistent. They say that, on the one hand, the preliminary injunction allows current and former

BB&T customers to voluntarily transfer their business to WealthSouth but that, on the other hand, the preliminary injunction prevents WealthSouth from receiving any benefit from solicitation of BB&T's current or potential depositors, customers, or clients.

But this understanding fails to read the provisions of the preliminary injunction comprehensively. For instance, the Defendants admit that some of the Individual Defendants had contact with current or former BB&T customers between September 4, 2017, and September 7, 2017. At the hearing on the motion for a preliminary injunction, the following colloquy occurred between the Court and counsel for the Defendants:

> THE COURT: And what's interesting is WealthSouth or the defendants say we've stopped doing that. Well, it's been a long time ago, many, many -- 50 years or so, but I remember principles of physics. To stop something that gets into motion, you have to stop it. And when you stop it, it means it has to have been in motion. So apparently, as I read the pleadings, WealthSouth says we did it, we stopped, we're no longer doing it. True?

> MS. KAMER: Yes, Your Honor.

> THE COURT: So what's the preliminary injunction going to do? It's going to stop you from doing what you say you've done now.

> MS. KAMER: Correct. . . .

[DE 51 at 4, Pg ID 701].

As a result, the Court enjoined the Defendants from benefitting from any solicitation of BB&T customers that violated the BB&T non-solicitation agreements in Jones's, Cadwell's, and

Watson's employment agreements.  To that end, the provision that prevents WealthSouth, as well as their representatives, employees, agents, and assigns, from benefiting from the solicitation of BB&T's current and former customers is limited and modified by the clause that says "in breach of Jones's, Watson's and Cadwell's non-solicitation agreements . . . ." [DE 48 at 2, Pg ID 692].  As a result, the preliminary injunction only prevents WealthSouth and its employees from benefitting from the solicitation of current or former BB&T customers *that was in violation of the BB&T non-solicitation agreements*.

Of course, it necessarily follows that BB&T may benefit from the business of current or former BB&T customers *that were not solicited by Jones, Cadwell, or Watson*.  Additionally, if accounts of current or former BB&T customers who were wrongfully solicited have already been transferred to WealthSouth, those transfers may be redressed through an award of money damages.

But now, the Defendants appear to argue that BB&T customers who were solicited by Jones, Cadwell, or Watson, should be able to transfer their business to WealthSouth in the future if that decision was made voluntarily by the BB&T customer even after the wrongful solicitation.  But such a piecemeal reading of the preliminary injunction's provisions reads the earlier provisions out of the Court's order.

In response, BB&T argues that the Defendants' solicitation of current and former BB&T clients cannot be undone and that the Defendants appear to want to continue to reap the benefits of their wrongful solicitation of BB&T customers. [DE 57].

BB&T is correct that the transfer of the accounts or business of current or former BB&T customers who were solicited by Jones, Cadwell, or Watson, in violation of the non-solicitation agreements would constitute a continuing violation of the non-solicitation provisions. If the Defendants truly mean what they say, that they now realize that Jones, Cadwell, and Watson should not have solicited current or former BB&T customers and that they have ceased that activity, then that cessation must include a refusal to transfer accounts that were wrongfully solicited in the first place. The Defendants cannot acknowledge that some BB&T customers were solicited and assure the Court that the solicitation is no longer occurring but then attempt to transfer the business of those BB&T customers who were wrongfully solicited.

As was previously discussed, provisions seven and eight of the preliminary injunction simply stand for the proposition that this preliminary injunction does not prevent WealthSouth from accepting business from or soliciting current or former BB&T customers *who were not solicited by Jones, Cadwell, or Watson*. Still, that obvious proposition remains true whether it is contained in the preliminary injunction or not and the Court

understands that these provisions may cause confusion. As a result, seeing as provision seven and eight are unnecessary because they state obvious propositions and may cause confusion, the Court will enter an amended preliminary injunction that strikes these provisions.

Otherwise, the remaining provisions of the preliminary injunction simply require the Defendants to do what they have already assured the Court that they have stopped doing. If WealthSouth knows or suspects that current or former BB&T customers were solicited by Jones, Watson, or Cadwell, they cannot benefit from that wrongful solicitation by transferring those customers' accounts to WealthSouth.

Of course, there will be some situations that will be unclear or fall into a "gray area." Regardless, the Defendants are in the best position to determine which BB&T customers were solicited by Jones, Watson, and Cadwell since the Individual Defendants are now WealthSouth employees and since any wrongful solicitation occurred when the Individual Defendants were employees of WealthSouth. As such, WealthSouth must bear the burden of complying with the provisions of the preliminary injunction and WealthSouth should err on the side of caution if unsure about whether transfer of a certain account will violate the preliminary injunction.

Additionally, the Court understands that the preliminary injunction may temporarily prevent some current or former BB&T

customers who may have been wrongfully solicited from transferring their wealth management business to WealthSouth. The Court has previously weighed this third-party harm when determining whether to grant injunctive relief in this matter and determined that, even considering this harm, injunctive relief was warranted. Still, these potential WealthSouth customers may do business elsewhere or simply wait until the conclusion of this litigation since the preliminary injunction only preserves the status quo during this lawsuit.

Lastly, the preliminary injunction contains explicit provisions to ensure that the order complies with the decisions in *Hall* and *Wells*, mentioned above. First, the preliminary injunction does not prohibit "communication or solicitation of BB&T clients who came to BB&T solely as a result of Defendant Jones's, Cadwell's, or Watson's own recruitment efforts, which BB&T neither subsidized nor otherwise financially supported as part of a program of client development." [DE 48 at 5, Pg ID 694]. Transfer of such a customer's business to WealthSouth does not constitute wrongful solicitation as a matter of law and, as a result, does not violate provision (2)(c) of the current preliminary injunction because such as transfer does not confer a benefit on the Defendants that is in breach of the non-solicitation agreements.

Second, the preliminary injunction comports with the *Wells* decision because it does not prohibit merely informational or

informal contact between Jones, Cadwell, or Watson and current or former BB&T customers.  [*Id.*].  Transferring an account that falls into the Wells exception does not violate provision (2)(c) of the preliminary injunction because merely informational contact does not constitute solicitation.

For instance, if contact between BB&T client Paul Heflin and Jones, Cadwell, or Watson, was only informational, as the Defendants assert in their motions, then his business may be transferred to WealthSouth.  If, on the other hand, the Defendants are unsure if the contact was purely informational, they should refrain from transferring the account to avoid violating the preliminary injunction.

Ultimately, nothing in this preliminary injunction prevents Jones, Cadwell, or Watson from telling current or former BB&T customers that they are employed at WealthSouth, but the conversation must end there.  An informational contact becomes solicitation if Jones, Cadwell, or Watson say something like, "Let's get together for lunch and talk about opportunities for you to move your wealth management to WealthSouth."

In sum, the Court will issue an amended preliminary injunction to strike the unnecessary and potentially confusing provisions in the preliminary injunction.  Still, outside of the narrow exceptions presently listed in provision five and six of the preliminary injunction, the Defendants may not benefit from the

wrongful solicitation of current of former BB&T employees. This means that if the Defendants know or suspect that a current or former BB&T customer was solicited in violation of the non-solicitation provisions in the BB&T employment agreements, they may not transfer those customer's accounts to WealthSouth. To hold otherwise would render the Court's preliminary injunction a dead letter, would allow the Defendants to violate the non-solicitation provisions in the BB&T employment agreements, which the Defendants have assured the Court they are not doing, and would potentially result in BB&T suffering irreparable harm during the pendency of this action.

## C. BB&T's Motion to Correct

Finally, BB&T asks the Court to correct the preliminary injunction to reflect the fact that Defendant Lee Lamonica Walker is subject to a non-disclosure agreement. The Defendants have not responded in opposition to this motion. Additionally, it appears undisputed that while Walker is not subject to a non-solicitation provision, she is subject to a BB&T non-disclosure agreement. As a result, the Court will correct the preliminary injunction to add Defendant Walker to the relevant provisions pertaining to the non-disclosure agreement.

## III. Conclusion

Previously, the Court weighed the relevant factors and determined that injunctive relief was warranted to prevent

irreparable injury and preserve the status quo in this matter. Still, to the extent that some of the provisions in the preliminary injunction are unnecessary and may cause confusion, they will be removed. Additionally, Defendant Lee Lamonica Walker will be added to relevant provisions of the preliminary injunction to reflect that she is subject to a non-disclosure agreement with BB&T. Otherwise, the rest of the provisions in the preliminary injunction will remain.

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's motion for oral argument is **DENIED**;

(2) Defendants' motion to alter or amend [DE 52] and supplemental motion to alter or amend [DE 58] are **GRANTED IN PART** and **DENIED IN PART**;

(3) Plaintiff's motion to correct [DE 55] is **GRANTED**; and

(4) The Court will enter a separate amended preliminary injunction consistent with this memorandum opinion and order.

This the 7th day of March, 2019.



**Signed By:**

_**Joseph M. Hood**_

**Senior U.S. District Judge**